UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HENRY JOHNSON,       )<br>                     )<br>   Plaintiff,       )<br>                     )              CIVIL ACTION FILE<br>v.                   )              NO._____<br>                     )<br>Healthy Reasons Inc..)<br>                     )              **JURY TRIAL DEMANDED**<br>   Defendant.        )| |

# COMPLAINT

Plaintiff Henry Johnson ("Plaintiff" or "Mr. Johnson") submits the following Complaint against Defendant Healthy Reasons ("Healthy Reasons" or "Defendant").

## JURISDICTION AND VENUE

1. Mr. Johnson's Title VII claims present federal questions over which this Court has jurisdiction under 28 U.S.C. §§ 1331 and 42 U.S.C. §2000e *et seq.* and this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

2. This Court is an appropriate venue for all of Mr. Johnson's claims under 28 U.S.C. § 1391(b) and (c) because all the parties reside within the Northern District of Georgia, and the substantial majority of events giving rise to Mr. Johnson's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

3. Mr. Johnson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated herein is "Exhibit A".

4. The EEOC issued Mr. Johnson his notice of right to sue. Attached hereto and incorporated herein is "Exhibit B".

5. Plaintiff has exhausted his administrative remedies prerequisite to filing this suit pursuant to Title VII.

6. Plaintiff has timely commenced this case within 90 days of his receipt of the right to sue.

## PARTIES

7. Plaintiff resides in the Northern District of Georgia and subjects himself to this Court's jurisdiction.

8. Healthy Reasons is a for-profit corporation licensed to do business in Georgia.

9. Healthy Reasons transacts business in the northern district of Georgia.

10. Healthy Reasons owns multiple businesses including a Smoothy King for with the Plaintiff was employed.

11. Healthy Reasons is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process:

WINCHEL ELIBERT .
739 ADAMS ROAD, FAYETTEVILLE, GA, 30214, USA

12.  Mr. Elibert is the owner and/or co-owner of Healthy Reasons.

13.  Mr. Elibert's title is CEO of Healthy Reasons.

14.  Mr. Elibert resides in the northern district of Georgia.

### FACTUAL ALLIGATIONS

15.  Defendant Healthy Reasons employed fifteen or more employees for each working day in each of twenty or more calendar weeks throughout 2021 and 2022.

16.  Defendant Healthy Reasons is subject to the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended.

17.  Despite being an employer covered by Title VII, Defendant Healthy Reasons did not have a sexual harassment policy, or a same sex harassment policy.

18.  In fact, Defendant did not have any employee handbook during the period of Plaintiff's employment.

19.  At all times material to this Complaint, Healthy Reasons employed Plaintiff.

20.  Plaintiff is a homosexual male.

21.  Plaintiff is a member of a protected class under Title VII.

22. Mr. Johnson's employment with Defendant began on August 23, 2021 when he was hired to be the manager of the Smoothy King franchise owned by individual Defendant Elibert.

23. Mr. Johnson was fired by Defendant on or about September 14, 2021.

24. Despite being a manager, Plaintiff could not fire or disciple employees without permission of Mr. Elibert.

25. Plaintiff received very little training for his job.

26. Plaintiff was told nothing about a sexual harassment policy.

27. Plaintiff was not given an employee handbook.

28. Plaintiff was not told how to set the alarm for the store.

29. Plaintiff was not given the code for the alarm.

30. Many of the employees whom Plaintiff was employed to manage were in high school.

31. Some of the high school employees were friends with the owner's son.

32. Further, upon information and belief, Mr. Elbert coached some of these employees in little league sports.

33. Shortly after Plaintiff started working some of the employees that Plaintiff was assigned to manage began to make fun of the Plaintiff's sexual orientation.

34. Specifically, Plaintiff endured daily comments, and jokes about his sexual orientation.

35. For example, some of Plaintiff's co-workers commonly called him a "faggot" and they frequently made comments like they, "…wouldn't work for no gay man".

36. Plaintiff complained to Mr. Elibert about the sexual harassment/same sex harassment he was experiencing from his co-workers.

37. Plaintiff wanted to discipline the employees for their offensive comments, but he was told that it was difficult to find employees during the pandemic and that he could not fire or discipline the staff as Defendant was short staffed.

38. On or about September 12, 2021 Plaintiff met with Mr. Elibert and his wife at a Starbucks to discuss the difficulties that Plaintiff was having with the employees.

39. Plaintiff explained that he was experiencing harassment, but Mr. Elibert told him he just needed to work on his management/communication skills, and that he needed to find a way to get along with the employees better.

40. The next day, September 13, 2021 Mr. Elibert, worked a shift with Plaintiff, but he left before the store closed.

41. At the end of the September 13th shift, Plaintiff closed the store as he had been instructed, but he did not set the alarm as he did not have the code and had not been trained on how to set the alarm.

42. The next day, September 14, 2021, Mr. Elibert texted Plaintiff and asked him why the alarm was not set. Plaintiff explained that he did not know the alarm code or how the turn on the alarm. Plaintiff further explained that he would set the alarm once he had the code.

43. The same day, Plaintiff forwarded a text message he had received from one of his employees to Mr. Elibert demonstrating the kind of sexual harassment he was experiencing. Specifically, the employee wrote: ***"Bruh is you gay? Everybody at work wanna know. You act real gay"***.

44. However, upon receipt of the message, instead of being concerned about the homophobic remarks and their effects on Plaintiff, Mr. Elibert said, "…someone thinking your gay is none of my concern…".

45. Later that same day, Mr. Elibert met with Plaintiff. During the meeting Mr. Elibert said you sent me this text about you being gay. You being gay is a private matter and is none of my concern. Plaintiff responded that it was harassment, and that legally it was his concern. Plaintiff explained that he has contacted the EEOC since Defendant didn't want to protect him.

46. Once Plaintiff mentioned the EEOC, Ms. Elibert, who was also present during the meeting said, you contacted the EEOC? It's just best that we separate, and Defendant terminated Plaintiff.

47. No other reason than Plaintiff contacting the EEOC was provided to Plaintiff during his termination meeting.

48. Defendant terminated Plaintiff in retaliation for his compliant of same sex harassment.

49. Defendant's actions constitute retaliation for Plaintiff's complaints of same sex harassment.

## COUNT I
## SAME SEX SEXUAL HARASSMENT/SEX BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

50. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

51. Plaintiff was subjected to frequent unwelcome and offensive comments based on his sexual orientation that constitute sexual harassment of Mr. Johnson.

52. Healthy Reasons does not have an employee handbook.

53. Despite the lack of a policy, Plaintiff did voice complaints of sexual harassment against Healthy Reasons.

54. Further, the sexually harassing conduct was open and notorious.

55. Despite this complaints Defendant failed to take any action to stop the harassment.

56. Healthy Reasons co-workers subjected Mr. Johnson to sexual harassment for which Defendant are liable.

57. At all times relevant to this action, Defendant knew or should have known of the sexual harassment endured by Mr. Johnson and the existence of a sexually hostile work environment, but it failed to take remedial action to protect Mr. Johnson.

58. Instead, Defendant allowed a sexually harassing work environment to exist.

59. Defendant's actions constitute unlawful and intentional same sex sexual harassment discrimination in violation of Title VII of the Civil Rights Act, as amended.

60. Defendant willfully and wantonly disregarded Mr. Johnson's rights, and Defendant's lack of action to stop the discrimination against Mr. Johnson constitutes bad faith.

61. As a result of Defendant' unlawful actions, Mr. Johnson has suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

62. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

63. Mr. Johnson engaged in protected activity under Title VII by complaining of sexual harassment/sexual assault, and by filing EEOC charges.

64. Mr. Johnson was terminated in retaliation for engaging in protected activity.

65. Healthy Reasons' actions constitute unlawful retaliation in violation of Title VII.

66. Healthy Reasons willfully and wantonly disregarded Mr. Johnson's rights under Title VII.

67. Healthy Reasons' retaliation against Mr. Johnson was undertaken intentionally and in bad faith.

68. As a result of Defendant unlawful actions, Mr. Johnson has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a) a declaratory judgment that Healthy Reasons has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended;

(b) an injunction prohibiting Healthy Reasons from engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act;

(c) full back pay from the date of Plaintiff's retaliatory termination, taking into account all raises to which Plaintiff would have been entitled but for his unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for its conduct toward Plaintiff and deter it from similar conduct in the future;

(g) nominal damages;

(h) reasonable attorney's fees and costs; and

(i) other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of July 2022.

/s/ *J. Stephen Mixon*
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard
Suite 150
Atlanta, Georgia 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039